## Loyal Order of Moose, St. Marys Lodge No. 146, Liquor License Case.

Argued June 12, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Donald D. Doerr*, Special Assistant Attorney General, with him *Thomas J. Shannon*, Assistant Attorney General, and *William C. Sennett*, Attorney General, for Pennsylvania Liquor Control Board, appellant.

*Leo Loffel*, with him *Gordon J. Daghir*, and *Houston & Daghir*, for appellee.

OPINION BY WATKINS, J., September 15, 1967:

This is an appeal by the Pennsylvania Liquor Control Board from the order of the Court of Quarter Ses-

sions of Elk County modifying the fine of $600 to $150 imposed by the board upon Loyal Order of Moose, St. Marys Lodge No. 146, for violation of its catering club liquor license.

The board, after hearing, found the following facts: "1. The licensed organization, by its servants, agents or employes sold liquor and/or malt or brewed beverages on the licensed premises to non-members without prior arrangements for such services on March 18, 19 and 25, 1966. 2. The licensed organization, by its servants, agents or employes maintained gambling devices and/or paraphernalia and permitted gambling on the licensed premises on March 30, 1966." The imposition of a fine of $600 followed and the licensee appealed to the Court of Quarter Sessions of Elk County. The court below modified the fine of $600 to $150 and from this order the Commonwealth appealed.

The court below adopted, as its own, the findings of fact as above set forth but modified the order to a fine of $150 on the ground that the three violations for sales to nonmembers could not be sustained, as a matter of law, on the ground that the board failed to give the club the required notice within ten days of the completion of the investigation of the alleged violations on March 18, 19 and 25, 1966 respectively. The court denied the contention of the appellee that the gambling finding was based on an illegal search and seizure and refused to suppress the evidence. This is not before us because the appellee did not appeal from the decision of the court below sustaining the board's action on the gambling violation.

The question before us is one of law that involves the interpretation of an amendment to the Liquor Code, April 12, 1951, P. L. 90, Art. IV, section 471, as amended, 1961, September 15, P. L. 1325, section 1; 1966, January 13, P. L. (1965), 1301, section 2 (47 PS 4-471). The pertinent part reads as follows: "no

penalty provided by this section shall be imposed by the board or any court for any violations provided for in this act unless the enforcement officer or the board notifies the licensee of its nature and of the date of the alleged violation within ten days of the completion of the investigation which in no event shall exceed ninety days." There seems to be no ambiguity in the language of the amendment. It is clear that the intent of the legislature was to bring to the attention of the licensee the violations of which he was charged by proper notice made within ten days after the completion of an investigation which in no case shall exceed ninety days.

"This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose . . .". Liquor Code, supra, 47 PS 1-104. This Court said in *Summit Hill R. & G. Club Liquor Lic. Case,* 184 Pa. Superior Ct. 584, 586, 135 A. 2d 781 (1957). "The proceedings before the board are civil and administrative and not criminal in nature."

The court below interpreted the act to mean that the board must give a notice to the licensee within ten days of each violation where the violation is of the type of "sales to non-members", which the court designated as "one night stand" violations, in that, in the opinion of the court below, no further investigation was necessary since the violation had been completed by the sale of the drink. This was patent error. With this interpretation the words contained in the statute "within ten days of the completion of the investigation *which in no event shall exceed ninety days*", is entirely ignored. (Emphasis added)

It is true that one sale to a nonmember constitutes a violation of the Liquor Code. However, under the act the board has the discretion to cite or not to cite under all the circumstances in the case. The act reads: ". . . the board may, within one year from the date of such violation . . . cite such licensee . . .". There are many cases where the board in the exercise of its discretion may not cite a licensee who has made "a sale to a non-member" because it may be the first offense or the circumstances surrounding it may move the board to delay drastic action or await further investigation to see if the violation is repeated. In many cases a letter of reprimand is first sent to the licensee. All this takes time. Even if we agree with the court below that the violations in this case were completed by the sales, that does not complete the investigation for the board to properly exercise its discretion to cite. The liquor control board agent, after he obtains the evidence of the sale, must make a report to the board; the administrative machinery then goes to work to determine many factors, such as the prior record of the licensee; then a recommendation must be made by the enforcement division to the board itself, recommending that a citation issue or not; and the board then exercises its discretion whether to follow that recommendation. This all takes time, and with the thousands of "one night stand" violations that pass through the board's hands the impracticability of sending notices to licensees within ten days of each violation is clearly apparent. If such was the intention of the legislature the board would need an army of administrative and enforcement officials and administrative expenses would skyrocket. The language of the act is clear and its purpose was to cut down the delay in giving notice to licensees so that the occurrence alleged remains fresh in their recollection in view of the one year limitation.

It is also quite true that many investigations could be completed in less time and most likely are, but the legislature in its wisdom, seized on a maximum of ninety days. In the instant case, the first violation was March 18 and according to the testimony the investigation was completed on Wednesday, March 30, 1966 and the required ten days notice was mailed by certified mail to the licensee on April 5, 1966. The first violation of March 18 to the day of the completion of the investigation on March 30, amounted to twelve days, so that all the violations were well within the ninety day period, while under the interpretation of the court below, all three of the violations fell outside of the ten day notice.

The order of the court below modifying the fine to $150 is reversed and the fine of $600 imposed by the Liquor Control Board is reinstated.