4-6 Club Liquor License Case.

Argued September 10, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Leo H. Loffel,* for appellant.

*I. Harry Checchio,* Special Assistant Attorney General, with him *Thomas J. Shannon,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for Pennsylvania Liquor Control Board, appellee.

OPINION PER CURIAM, November 12, 1969:
Order affirmed.

———

DISSENTING OPINION BY CERCONE, J.:
On August 2, 1967, the 4-6 Club of Philadelphia was cited for violation of the Pennsylvania Liquor

Code. The violation charged was that the Club "by its servants, agents or employes sold liquor and/or malt or brewed beverages on the licensed premises to non-members, on September 17, 18, 24, 25, November 26, 27, 1966; March 21, April 1 and 2, 1967."

A hearing was held by the Liquor Control Board on November 10, 1967, after which the Club's license was revoked and bond forfeited, effective January 23, 1968.

On appeal by the Club, the Philadelphia County Quarter Sessions Court heard the matter de novo and then sustained the charge but remanded the matter to the Board for reconsideration of the penalty. The Board refused to reconsider the matter, and the court then affirmed the Board's order of revocation and dismissed the appeal. Supersedeas was granted by this court.

The majority affirms the lower court's action, but I would reverse on the ground that notice of the alleged violations was not forwarded within the time required by statute. It is my interpretation of section 471 of the Pennsylvania Liquor Code (Act of January 13, 1966, P. L. (1965) 1301, section 2, as amended, 47 P.S. 4-471), that the Board must notify the licensee of the alleged violation within ten days of the completion of investigation, which investigation must not in any case take more than 90 days from the date of the violation, so that in no event can more than 100 days elapse from the date of violation to date of notice. That pertinent section reads: "No penalty provided by this section shall be imposed by the board or any court for any violations provided for in this act unless the enforcement officer or the board notifies the licensee of its nature and of the date of the alleged violation within ten days of the completion of the investigation which in no event shall exceed ninety days." I would reason that the Legislature meant "which in no event shall exceed ninety days from the date of the violation." In this

case, 300 days had elapsed from the date of the first offense to the date of the unclaimed registered letter relied upon as notice,[1] and 103 days had elapsed from the date of the last offense to the date of said letter, so that notice was not sent within the maximum 100-day period which I believe the legislature has required.

It is the Board's position, and apparently that of the majority of this court, that the 90-day period referred to in the above-quoted section did not begin to run until the Board had begun its own investigation, and that since the Board did not in this case begin its investigation until July 12, 1967 (because it was awaiting the report of the District Attorney's investigation which was not received until May 12, 1967) and concluded its investigation on July 14, 1967, its investigation was well within the 90-day period and it had 10 days from the said July 14 within which to send the notice. To agree with this contention advanced by the Board would mean that the Board could delay the commencement of its investigation by any period it desired, just so it completed the same within 90 days and notified the licensee within 10 days after the conclusion of its investigation. Certainly, such construction goes contrary to the very obvious intendment of the legislature: to allow for speedy notification to a licensee of the violations with which the Board seeks to charge it. That this was the purpose of section 471 clearly appears from the reading of the Senate Legislative Journal 1965, Vol. II, pp. 1567-69, where it is stated for the record by Senator Jirolanio: "Why was the provision put in? Let me tell you why. As the law is now, very, very often, a licensee is notified by the Pennsylvania Liquor Control Board that a cita-

---

[1] The issue was raised as to the sufficiency of this unclaimed registered letter to constitute notice; I would find it unnecessary to pass on that issue as, in my opinion, the letter was not sent within the required time.

tion has been issued against him, whereby and whereas, in that particular citation, the licensee is charged with having committed a violation of the Liquor Control Board Act. That particular violation, Mr. President and Members of the Senate, believe me or not, can date back anywhere from four, five, six, seven, eight and nine months. I have had many, many cases before the Pennsylvania Liquor Control Board where the licensee was forced to answer to an offense that took place nine months before he was notified. I ask this Body, being a reasonable Body, 'How could anyone recall or remember anything that had occurred eight or nine months ago?'" and by Senator Johanson: "Now, as to specifics, Mr. President, we have heard something in regard to the notification to the individual licensee of a violation. At the present time the notification can be as late as one year after the violation. This bill does correct it to the extent that it provides for notification within ten days after the completion of the investigation, and in no case more than ninety days." To sustain the Board's reasoning would mean that if the Board conducts no investigation at all, it can notify the licensee of an alleged violation at any time thereafter; or it does not have to give any notice at all; yet, that contention has already been expressly rejected by our court in *Greenspan Liquor License Case*, 213 Pa. Superior Ct. 29 (1968), with the unequivocal statement: "We cannot agree with this contention. It would create a situation where the Board could avoid the notice requirement in numerous situations on the ground that it was unnecessary to make an investigation. The notice is a mandatory requirement set by the legislature and cannot be so avoided." It is my opinion that the same reasoning should require us in the instant case also to hold that the Board cannot avoid giving timely notice on the ground it was delayed in commencing its investigation, especially when it was

524

the clear purpose of section 471 to avoid such delay. The conclusion that the 90-day period runs from the date of the violation was implicit in this court's holding in *Loyal Order of Moose, St. Mary's Lodge No. 146, Liquor License Case,* 210 Pa. Superior Ct. 464 (1967), where it reversed the lower court, saying: "In the instant case, the first violation was March 18, and according to the testimony the investigation was completed on Wednesday, March 30, 1966 and the required ten days notice was mailed by certified mail to the licensee on April 5, 1966. The first violation of March 18 to the day of the completion of the investigation on March 30, amounted to twelve days *so that all the violations were well within the ninety day period,* while under the interpretation of the court below, all three of the violations fell outside of the ten day notice."*

I, therefore, dissent.

HOFFMAN, J., joins in this dissent.

---

\* Emphasis supplied.