Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board *v.* Union Home Association of Lancaster, Pennsylvania, Appellant.

Argued March 11, 1977, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Theodore A. Parker,* with him *Parker & Sheidy,* for appellant.

*David Shotel,* Assistant Attorney General, with him *Harry Bowytz,* Chief Counsel, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, April 5, 1977:

This is an appeal from the order by the Lancaster County Court of Common Pleas which, after a hearing de novo, sustained the order of the Pennsylvania Liquor Control Board (Board) revoking appellant's club liquor license and forfeiting its bond. Despite the forceful argument of counsel for appellant, we must affirm.

On June 6, 1975, an enforcement agent of the Board commenced an investigation of possible non-member

sales at appellant's club. On July 17, 1975, the agent obtained a report from a local police detective that gambling paraphernalia and a gambling device maintained by appellant had been seized at the club pursuant to a search warrant on May 17, 1975. On August 26, 1975, the agent concluded his investigation and the next day appellant was notified of the alleged gambling violation of May 17, 1975. Appellant received a citation and at a subsequent hearing the Board found as a fact that appellant had maintained the gambling device and paraphernalia on May 17, 1975. The Board, after considering several prior violations by appellant, ordered appellant's club liquor license revoked and its bond forfeited. The common pleas court sustained the order after a hearing de novo. This appeal followed.

Appellant contends that the Board did not comply with the notice requirements of Section 471 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §4-471. That section reads in pertinent part:

No penalty provided by this section shall be imposed by the board or any court for any violations provided for in this act unless the enforcement officer or the board notifies the licensee of its nature and of the date of the alleged violation within ten days of the completion of the investigation which in no event shall exceed ninety days.

Appellant argues that the agent's investigation as to the gambling violation began and ended on July 17, 1975, with the receipt of the police report and that it was only the investigation of possible non-members sales which continued until August 26, 1975. If this were correct, the August 27, 1975 notice of the gambling charge would be beyond the ten day limitation of Section 471 on the notice of investigation which began and ended on July 17, 1975. We cannot agree.

In *Loyal Order of Moose, St. Marys Lodge No. 146, Liquor License Case*, 210 Pa. Superior Ct. 464, 234 A. 2d 25 (1967), the Superior Court held that even where after an investigation is started and all the necessary facts uncovered, in this instance one day, the Board may take up to the statutory maximum of ninety days before giving notice of such alleged offense, in order to weigh all the circumstances of the case. The Court stated that "It is also quite true that many investigations could be completed in less time and most likely are, but the legislature in its wisdom, seized on a maximum of ninety days." *Id.* at 469, 234 A.2d at 27. Here, while it appears that the investigation following July 17, 1975 centered primarily on possible non-member sales rather than the alleged gambling violation, the Board was within its power to examine all the circumstances of the case (especially because of appellant's numerous prior citations) and delay notifying appellant as to the alleged gambling violation until the completion of its non-member sales investigation, so long as such investigation did not exceed ninety days. Since the investigation began at the earliest on June 6, 1975 or the latest July 16, 1975, and was completed on August 26, 1975, the ninety-day maximum was not exceeded.

After a de novo hearing, President Judge W. HENSEL BROWN, speaking for a three judge court en banc, stated:

> In view of the fact that Union had nine prior citations from the Pennsylvania Liquor Control Board from 1966 through 1975 for violations of the laws of Pennsylvania or the regulations of the Liquor Control Board it is reasonable to assume that Walker and/or other Liquor Control Board agents needed more time, to wit, from July 17, 1975 to August 26, 1975, to conclude their ongoing investigation.

Supportive of this conclusion is the testimony of Enforcement Officer Walker who testified that after receiving the report on July 17, 1975 he attempted to contact the undercover officers in Philadelphia who had been in Lancaster on special assignment and worked on the gambling charge for the Lancaster police. It was only after he learned that these undercover officers could not be brought into the case, presumably so that "their covers" would not be compromised, and after again contacting the Lancaster police on August 27, 1975 that Enforcement Officer Walker concluded his investigation.

Accordingly, we will enter the following

ORDER

Now, April 5, 1977, the Order of the Lancaster County Court of Common Pleas at License Docket No. 1, dated June 23, 1976, sustaining the order of the Pennsylvania Liquor Control Board, dated January 12, 1976, which revoked Club Liquor License No. C-3779 and ordered the bond accompanying such license for the license year beginning February 1, 1975, forfeited, is hereby affirmed.